Our next case on the call the docket is agenda number 19 case number one one five eight six zero Roy Dean Rogers the second at all Napolese versus Ghani a Mary individually appellant counsel for the appellant please proceed may it please the court Hugh Griffin for the defendant appellate counsel I think mr. Custer and I both thank the court for deferring lunch for a little bit longer this case comes to you today on a certified issue under rule 308 in a suit under the Dram shop act against the defendant appellant Ghani a Mary who I am privileged to represent at the request of the Illinois Insurance Guarantee Fund because mr. Mary's liquor liability insurer was declared insolvent in January of 2011 and that triggered not only his defense by the fund but application of all the provisions of the Illinois Insurance Guarantee Fund Act including the provision we're most concerned with today which is section 546 a mandating a reduction of the claim against the fund and the defendant by the amount of other insurance collected by the plaintiff it's that other insurance reduction that's mandated by section 546 a that gave rise to the certified issue the essence of which is where the jury returns a verdict in a Dram case in excess of the maximum statutory limit is the other insurance reduction applied to that higher jury verdict or is it applied to the maximum statutory cap that constitutes the liability of the defendant let me put a little on the bones if you will all agree that in this case the plaintiffs have recovered a hundred and six thousand five hundred and fifty dollars of other insurance it came from the tortfeasors insurer and the bulk of it came actually from the plaintiff's own underinsured motorist carrier all agree that this entire $106,550 is other insurance under section 546 a and all agree it entitles the defendant and the fund to a reduction in that amount again the issue then is does that $106,550 come off the maximum cap of the of the Dram Act which again all agree in this case that cap is $130,338.87 leaving a gap of some $23,778.51 which is the amount we claim the fund owes here or does it come off that higher jury verdict whatever it may be the fifth district held that it comes off the higher jury verdict first district in a subsequent case Guzman held that no it comes off the statutory cap and we submit that Guzman is the correct answer it's been contrary to the fifth district is incorrect and we base our argument fundamentally on the plain and clear language of section 546 a itself which expressly says that the funds obligation under section 537.2 shall be reduced by the amount of other insurance recovered and that the liability of the person insured by the insolvent jurist policy shall be reduced by the same amount. Well, in a DRAM case where the jury verdict exceeds the maximum statutory cap, that higher verdict is not the liability of the DRAM shop owner. It's not the obligation of the fund. And so that's clear right from the DRAM shop act itself. Plaintiff makes the point that the jury in a DRAM case is not told what the cap is, and that's true. But the act then expressly states in no event shall the judgment or recovery under this act exceed the statutory cap. So the DRAM shop act itself actually in its own language says that the maximum obligation is the amount of the cap. And again, plaintiff says the word obligation is not defined in the fund. But it is. As the Guzman court held, section 537.2 of the act says the fund shall be obligated to the extent of covered claims. Section 534.3a of the act defines covered claims in the third party context as an unpaid claim for a loss falling within the coverage of the insolvent insurance policy for which a person insured under such policy is, quote, legally liable. Well, again, in a DRAM case where the verdict exceeds the statutory cap, the amount for which the insured is legally liable is the amount of the cap. And so we submit that just on the plain language of section 546a, that the Fifth District's analysis is incorrect and that the First District analysis in Guzman is the correct analysis that this court should adopt. I think even the examples that plaintiff gives in his own brief, he says, well, consider a case where there was a verdict of $500,000. He says what you do is you reduce that $500,000 by the amount of the other insurance. I think he says it gets you to about $300,000. And then you reduce that down to the cap. Well, with all due respect, reducing an amount that I don't owe to another amount I don't owe is not giving any reduction or any benefit at all to the fund or to the defendant of the insured of the insolvent insurer. So it really would render, in many cases, the other insurance reduction in section 546 meaningless. Now, it is true that in a case where the fund is not involved, that is how set-offs are handled. If there's a higher verdict and there's a settlement by a co-defendant, it is applied against the higher jury verdict. But when the fund is involved, we just have all these other statutory provisions to deal with. And if I may refer to Justice Burke's very comprehensive opinion in the Roth case, where she interpreted the current version of section 546 to apply to a whole range of insurance, and that's what the legislature intended to do is broaden the range of other insurance. In her case, in the Roth case, the amount owed was $20,000. There was a settlement for the policy limits. Now, after that settlement occurred, the insurer went under. And so the case then came to the fund, and the other insurance provisions were triggered by the fact that the insurer had $130,000 of medical insurance. And Justice Burke correctly held, following the express language of section 546, that that other insurance reduces the liability of the insured and the fund's obligation, in that case, to zero. So normal set-off rules basically are altered when the fund is involved. And that's just a basis of the other insurance provisions, which this Court has recognized in the Haisman case. If I may quote, in that case you held that the fund was entitled to set off uninsured motorist coverage limits, even though the plaintiff settled for less. And the basic philosophy of the fund that you recognize there, and it's applicable here, is that the fund is a recovery of last resort by requiring that the claimant first seek to cover his loss with funds available from other insurers. Mr. Griffin, your interpretation of section 546A, as it should do, protects the interests of the Illinois Insurance Guarantee Fund and its contributors and insurers. But how do you reconcile that interpretation with the statute's express purpose to protecting policyholders and third parties who have claims that are covered? Yes. I mean, it's no doubt that that's an aspirational goal of the fund, to protect insurers and also the insurance-buying public of the state of Illinois who provide the assets of the fund, as the courts have recognized, through their payment of premiums. And, again, it's a balance that I think the legislature had to balance all of those interests and come up with some solution. And the solution they came up with is that if there is other funds available from insurer, we will credit the fund with those funds, and the fund then will make up any difference, as they will here. There's still some $23,000 to be made up. Whether you believe that's the wisest solution, it is consistent. We cited many cases from out of state, and it is consistent with most guarantee fund statutes that they do have this other insurance provision. The fund is recognized, and, again, this is your language from Haseman, as the source of last resort. And so, in the view of the legislature, the purpose of the DRAM Act really has been satisfied here, because plaintiff will recover his full $130,000 cap, a large part of it from insurance, solid insurance that he recovered, and then the fund will make up the cap, and the Guarantee Fund Act purpose will be carried out, because the fund is going and the insurer. The statute also says the insurer, who is to be protected here, too. He bought a policy, the company went under, he paid a premium. He's another party that needs to be protected here. And the statute says that he, too, will get the same reduction as the fund in his obligation for the amount of other insurance that's recovered. And as I say, that's just how the legislature decided to do it. Is it a perfect solution? Does it always put everybody back in the same situation? Does it always avoid a loss? Again, in Roth, court recognized, no, it doesn't. And Haseman, again, is another case where it really didn't put everybody back in the same situation, but taking into account the intent of the fund, the purpose of the fund, and the legislature's solution, that's what the law required. And we respectfully submit that that is exactly where we are in this case. Again, the plaintiff will get some $23,000 that wouldn't exist but for the fund, and the balance will be made up from the other insurance that they have recovered. We submit that's the correct result, and the First District analyzed it correctly, and we would ask this court to do the same. Any questions? I'll reserve for rebuttal. Thank you. Good morning. May it please the court, counsel. My name is Chris Custer, and I do indeed represent the estate of Roy Rogers and the Rogers family. Before I discuss what the fund's obligation is under 546 and 621A of the Dram Shop Act, I think I would be remiss in not at least for 15 seconds mentioning the events that led up to today. October 22nd will mark the four-year anniversary when Roy Rogers, 18 years old, was killed by a drunk driver. Roy and Teresa lost their only son. Haley and Darian lost their only brother. On October 22nd, 2009, a tragic but all too familiar chain of events occurred. Roy was going home from his girlfriend's house, going back to his parents' house, and was killed by a drunk driver who crossed the center line coming from Johnny's Bar and Grill, owned by Johnny and Mary. Roy was traveling back from his girlfriend's house. Before Mr. Griffin entered the case, we certainly had discovery, and we know exactly what happened because we had surveillance. It was one of those all-too-tragic cases where Mr. Winterow did the drunk driver. We have video of him drinking 15 bottles of beer, falling off his stool twice. When he leaves, he almost backs into some patrons in the parking lot, travels south on 45 and runs into Roy killing him. Blood alcohol level was 283. Roy didn't drink. His was zero. Shortly after that tragic event, all the normal insurance events start to happen. Mr. Winterow is insured by a policy of liability insurance, the minimum amount of $20,000. That is tendered to the estate, to the family. The Rogers family had their own auto insurance from Pekin Insurance Company. They carried underinsured motorist UIM protection of $100,000. So the additional $80,000 indeed was tendered, and the additional $6,000 to make $106,000 was for the property damage for the totaling of the Rogers family's Saturn car. Thereafter, a dram shop suit was filed against Johnny and Mary in June 2010. Seven months later, after we had conducted discovery and were very close to settling the case, the Constitutional Casualty Company, the dram insurer for Johnny's liquor, liquidates. Counsel comes in. The fund comes in. As soon as that happens, the fund said, we're not going to play by the normal rules that you play in dram shop cases. We're going to have different rules. There are no different rules. There is nothing in Section 546 of the Guarantee Fund Act that says what the fund is saying it says. It doesn't even mention the Dram Shop Act. There is nothing in the case law that says when you have a case where you have the fund involved instead of the private carrier, that you reduce the monies received from the other insurance from the dram shop limit instead of the gross verdict. It doesn't exist. I like the Roth case too, but that didn't stand for that. What that said is when we talk about other insurance, health insurance applies. That's what that case said. There was a settlement in that case. So the question we have before us, is there anything in the Fund Act or any case that says that the other insurance proceeds, in this case $106,000, and I hate talking about money when we're talking about the loss of a son, is deducted from the liability limit of $130,000 or the gross jury verdict. In every single dram shop case, there is a three-step process. In every case, there is a three-step process. The Dram Shop Act 21A could not be more clear. It says in every action, in every action, a jury shall determine the amount of damages regardless of, without reference to the limits. Didn't even hear the funds council mention that today. So what happens is you go ahead and have your trial. In fact, the trial judge orders an order in limine saying, counsel, no one can talk about the amount of the limits. The jury verdict issues a verdict based upon all the damages. And the parties in this case agree that the jury verdict would be far in excess of the limits. So that was not an issue. So what happens is, let's say it's $500,000 verdict. Jury leaves. Defendant in a case files his post-trial motion saying, okay, there's other insurance, $106,000. We reduce that from the jury's gross verdict. Happens in every case. You get down to $393,000. Then, and only then, if that verdict amount still exceeds the statutory limit, then you enter the limit. In this case, it's $130,000. Counsel, is this a question of statutory interpretation, statutory construction, or are we talking here on public policy? I think it's both. But primarily, Justice, I believe it's statutory construction. And as this Court is well aware, when you're trying to construe the Dram Shop Act 21A and the 546, the Guarantee Fund Act, we're supposed to construe them, interpret them, to give meaning to both acts, to make them consistent if you can. The way the Fifth District did it, and they did analyze this, as opposed to the Guzman Court, which didn't. They said, we can give effect to both acts because in 21A it says, in every case, a jury shall determine the amount of damages. You're doing that. Likewise, 546A of the Fund Act is being satisfied because they are getting the reduction from other sources. It just so happens that a Dram Shop case, the way it's set up, those are deducted from the gross verdict anyway. That doesn't mean they get to then just deduct it from the statutory limit. Could you help me with that? Maybe the math is a little troubling to me. So if we're talking about statutory construction, the language of the statute says, the fund's obligation under Section 537.2 shall be reduced by the amount recovered or recoverable, whatever is greater, under such other insurance. So my first question is, what is the fund's obligation? That is indeed the million-dollar question. Okay. Can you help me with that? Anyone who says, I can answer that. Anyone who says that it's defined anywhere is incorrect. It is not defined. The fund's obligation is not defined. The Guzman Court, the First District Court, attempted to figure out some rationale to figure it out, and they went to the part of the act that talked about a covered claim. But that section, as I state in my brief, only talks about when the fund gets involved within 30 days after liquidation. It certainly doesn't define the obligation of the fund. If we define the obligation of the fund as you get to, rather than have a jury trial, which 21A says you have to have in every case, all you have to do is call the comptroller's office and figure out what the statutory limit is for that particular year, and then reduce the amounts received from other sources, that's what they want to do. How is that reconciling the Dram Shop Act that says a jury must determine? It's not. How do you respond to Mr. Griffin's argument that the fund's obligation is, in fact, limited by the Dram Shop Act limit? First of all, there's no case that says that. I'm not certain I'm understanding your question, Justice Carmier. But the fund is getting the benefit of reducing it from the other money received from the other insurance sources. They are receiving that. Mr. Griffin argued, though, he said, we don't get any benefit because they would never pay more than $130,000, if I understood that correctly, the obligation. Therefore, there's no benefit. Well, I just respectfully disagree with that. Again, if you follow the counsel's logic, you would nullify a plaintiff's right to a jury trial. The fund is indeed receiving that. They will never have to pay more than the statutory obligation. Ever. Ever will they have to do that. And, again, I think it's- Does it all hinge then on how we define fund's obligation? Because that's what's being reduced. That's true. Fund's obligation shall be reduced by the amount recovered or recoverable. But my point is, Justice Carmier, is that we determine the fund's obligation by going through the process that, in every single case we go through in a dram shop case. And that is, you have your jury trial. The jury-the plaintiff gets the opportunity to present it to the jury. And they give us the jury verdict. And then we deduct the $106,000 received from other sources. And, again, then if it's still more than the statutory limit, the judgment is entered by the trial judge for the statutory limit. They are receiving the benefit of that. You know, with regard to the jury trial, I did see in the reply brief that the counsel did try to, I guess, rationalize when you might have a jury in a case like this. And I guess I will refer to the heads-I-win-tails-you-lose concept, where he says, well, you know what? I guess we could have a jury trial. Let's say we try this case with the Rogers family. And, you know what? We'll take a shot. We can't lose. If the jury verdict is more than $130,000, we're going to take the $130,000 dram shop limits and deduct the $106,000 and still come up with $23,000. However, plaintiffs, I'm sorry, if you get a judgment where we think this judgment might be, whatever, a million dollars, you pick a number, you don't get the benefit of that. I hate using baseball analogies in this town, but it would almost be like if the bases are loaded, there's nobody out, we're on the mound, and the rule says, the statute of limits says you can only score one run an inning. Well, the fund's going to say, well, you know what? We'll take a shot at it. Perhaps we'll strike out the side and you'll score zero runs. So we'll give you zero runs instead of one. But if you hit a home run or if you have an eight-run inning, you don't get the benefit of that. You go down to the one-run rule or the statutory limit. That's not what anybody envisioned. There is no section in the Guarantee Fund Act that mentions the Dram Shop Act. There is no common law case that says you have to do what they say you're supposed to do. I'm a little confused on that, Mr. Koster. You mentioned that you're okay with the First District case as well. No, I disagree. Didn't you say that at one point? You said, I'd like that case as well. I like the Roth case. I like Justice Birch's Roth case. I think you may or may not. Now I understand you. You either misspoke or I misheard. I probably misspoke. But let me make that perfectly clear. Even if you didn't, that was a good thing to say. The Guzman case, in fact, this is the first time I've ever attached a brief filed in another district case. They missed it. They missed the entire issue. The plaintiff in Guzman said, we shouldn't have to pay attention to the, we shouldn't have to reduce any funds received from other sources because our underlying case was a common law case against the drunk person. And this case is a statutory case against the dram because one's statutory, one's common law. We don't have to apply. That's wrong. That's wrong. We met head-on in the trial court. We met head-on in the Fifth District Court this very issue. We talked specifically about construction of statutes. We have to harmonize them and give effect to both if possible. And the Fifth District did exactly the right thing and said we can give effect to both. They are in harmony. But if you do what the First District did and what the fund is suggesting we do here, you are completely nullifying the plaintiff's right to a jury trial. You are completely ignoring the statute that says in every case a jury shall determine damages irrespective of the statutory amount. I can't say anything more strongly than that. It's a pleasure to be here. It's an honor to be here. Thank you for your time. If you have any more questions, I'm willing to answer them. But what we would like for you to do is affirm the appellate court, Fifth District appellate court, and the trial court, and also preserve the plaintiff's right to a jury trial in the dram shop case and harmonize the statutes 546 of the fund, 21A of the dram shop. Thank you very much for your time. May it please the court a short rebuttal. It's not the Guarantee Fund Act that stops a home run in this case. It's the Dram Shop Act. It's the Dram Shop Act that sets the cap. It doesn't matter if the jury verdict's a million dollars. All you're going to have to pay, the only liability of the bar owner is going to be that cap. And while he continues to say that the word obligation isn't defined in the act, if I may repeat the reference to 537.2, which says, The fund shall be obligated to the extent of covered claims. And what's a covered claim? It's a loss within the coverage of the insolvent insurer's policy for which a person insured under such policy is legally liable. That's in 534.3A. That's the definition, the legal liability. And now you go over to 546, and the reduction, what's it from? It's from the liability of the insured and the obligation of the fund. Again, it's the Dram Act that imposes that limit. It's not the Guarantee Fund. He says, well, the Guarantee Fund doesn't talk about the Dram Shop Act. Well, it doesn't talk about the Survival Act or the Wrongful Death Act. It's covering any claim in the world that's covered under a policy of an insolvent insurer. And in this case, it's covering a Dram claim in which the maximum liability is some $130,000. And that $106,000 of other insurance, by express language of the statute, gets set off from that amount. Under his view of life, in all respect, And it's a tragic accident. I don't mean to make light of it. But in his view, I mean, the statute's meaningless. We just go ahead and apply the set-offs like we would if there was no Guarantee Fund involved, no 546. Take it off the higher verdict. And he says Guzman didn't deal with that. They did. They cited the Kurth case, and Kurth, K-U-R-T-H, is the case that talks about in a normal case, how do you do this without any guarantee fund involved? And you do do it the way he's suggesting. But as the Guzman court said, that doesn't support plaintiff's position in this case. Kurth determined the proper procedure to allow set-offs. The Guarantee Fund would always be involved, right? I mean, the maximum, even taking it off the jury verdict, would be the $138,000 number, right? The jury verdict could be any number. But the only judgment that the Dram Shop Act allows is the maximum amount. The only judgment that will ever be entered is the $138,000. Right. But what I'm saying is you have a jury verdict of $2 million. Right. If you're separating, if you're deducting from the $2 million, the $106,000, your client would be on the hook for $138,000 rather than $32,000 or $22,000 or whatever it is, right? It would be on the hook for the maximum obligation. It would get no reduction. There would be no reduction in the amount it owed. Right. So either way the set-off is applied, you wouldn't, you still would have a maximum liability of $138,000. Agreed? Not exactly, because what we're saying is the set-off, $106,000, applies to the $130,000. And that leaves a balance of $23,000, and that's what we owe. Okay. And under his argument, you would subtract the $106,000 from the jury verdict. You would still, regardless, have a maximum liability of $138,000, right? Right. And that would be true in a case where the fund wasn't involved. I don't want to mention that to say, you know, we can't, the issue of where the set-off is applied doesn't completely take away the guarantee, the aspect of the guarantee fund that is setting a maximum liability as to that fund. Well, it takes away the aspect of Section 546, which says the fund is entitled to a reduction from its obligation, and the insured is entitled to a reduction of its liability. It takes that away. It wouldn't be involved at all. As I say, taking a reduction from an amount we don't owe to another amount we wouldn't owe, that's no reduction. I mean, there's no actual reduction. The fund wouldn't get any reduction. And, you know, again, the fund is involved. It does make a difference. And, again, the legislature created this Section 546. This Court has continually recognized that it's meant to mean that the fund is the source of last resort, and we book to other solvent insurers to protect the assets of the fund whenever it's available. And it does change the normal rules. With respect, again, to the Roth case, if I could refer to it, again, the policy limits were $20,000. The settlement was $20,000. Then the insurer went bankrupt. Then the fund came in, and the Court correctly held under 546, well, we've got to reduce that $20,000 to zero because there's $130,000 of other insurance sitting there. And that's what the statute requires. Now, if there hadn't been any insolvency, the insurer would owe the $20,000. The insurer couldn't come in and say, hey, you've got some medical coverage. We're not paying you the $20,000 policy limits. No, that wouldn't be a proper reduction in a case where the fund wasn't involved. But where the fund is involved, it can make a difference. Not always, but in certain cases it does. And in this particular case, again, the way the legislature views this is that it may have made a difference, but there still was a pot of money available to equal that one-third. And that's what the legislature has said. If it's a pot of money and it might come from solvent insurance and it might come from the fund, whereas here it might come from both, and where it does, we're going to hold that that satisfies the obligation and the fund is entitled to that reduction in that way. It really does satisfy the purpose of the DRAM Act in the sense that that amount of money was obtained and it also gives the fund the reduction to which it's entitled. So we would ask this court respectfully to reverse the Fifth District and to hold that where there is a verdict in excess of the maximum statutory limit, that the reduction for other insurance comes off that statutory maximum and not the higher verdict. Thank you very much. Thank you. Number 115860, Roy Dean Rogers II, et al., I believe, v. Johnny. Mary Pellin is taken under advisement. This is agenda number 19. Mr. Griffin, Mr. Custer, we thank you for your arguments today. Mr. Marshall, the Illinois Supreme Court stands adjourned.